# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| DONALD ISSA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:05-CV-394-TS |
| | ) | |
| PRIORITY TRANSPORTATION, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

**A. Background**

The Plaintiff, Donald Issa, sued the Defendant, Priority Transportation, LLC, in the Allen County Superior Court for negligent hiring and retention of one of its drivers, Christopher Peterson. The Plaintiff alleges that Peterson, who had an extensive history of bad driving, caused a car accident in Sterling Heights, Michigan, involving the Plaintiff, by attempting to make a prohibited left turn. The Plaintiff's car was uninsured at the time of the accident. The Complaint demands compensatory and punitive damages.

The Plaintiff is a Michigan resident. The Defendant is incorporated in Delaware and has its principal place of business in Florida. The Defendant also has an office in Fort Wayne, Indiana, where Peterson was hired as a truck driver.

On November 11, 2005, the Defendant removed the case to this Court. Now, the Defendant wants to transfer the case to the United States District Court for the Eastern District of Michigan, arguing that the court would be a more proper venue than the instant Court. The Defendant submits that the litigation there would be much more convenient because the accident occurred in that district and all witnesses (except Peterson), as well as the Plaintiff, live in Michigan. The Defendant

submits that, if the Michigan witnesses refused to testify at trial in Indiana, the Court would lack compulsory process over them, as it is located more than 100 miles from their residence. Finally, the Defendant points out that it is already defending a companion suit in the Eastern District of Michigan and indicates that several other suits are likely to follow there.

The Defendant also moved to dismiss the Plaintiff's case for failure to state a claim for which relief can be granted. The Defendant argues that under Indiana's choice-of-law principles, the case is controlled by Michigan's No-Fault Act, which bars the Plaintiff's claims because his car was not insured at the time of the accident.

The Plaintiff argues that the Defendant has not shown that it would be clearly more convenient to litigate this case in the Eastern District of Michigan, as is required for *forum non conveniens* transfers. He submits that the Northern District of Indiana is the proper venue because it is the location where Peterson was hired and where the Defendant became aware of his bad driving record. The Plaintiff argues that the Defendant's employees, who are crucial to his theory that the Defendant negligently hired and retained Peterson, live in Indiana. As a result, he suggests that the balance tips in favor of keeping the case in Indiana. He also insists that the Defendant has not shown that the transfer is mandated by the interest of justice. Finally, the Plaintiff asks the Court to defer to his choice of venue in Indiana.

Similarly, the Plaintiff objects to the Defendant's motion to dismiss and argues that the case is controlled by Indiana, not Michigan, law because all the events leading up to the accident took place in Indiana.

Along with filing these motions, the Defendant moved for a hearing on both the motion to change venue and the motion to dismiss. The Court finds that this case can be decided on the parties'

submissions, and that a hearing is unnecessary.[1]

## B. The Defendant's Motion to Transfer Under 28 U.S.C. § 1404(a)

### (1) *Standard for Evaluating a Motion to Transfer*

Section 1404(a) governs the transfer of a case from one federal district court to another: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The courts have interpreted this statute to require the moving party to demonstrate that "(1) venue is proper in the transferor district; (2) the transferee district is one where the action might have been brought (both venue and jurisdiction are proper); and (3) the transfer will serve the convenience of the parties and witnesses and will serve the interest of justice." *Medi USA, L.P. v. Jobst Inst., Inc.*, 791 F. Supp. 208, 210 (N.D. Ill. 1992). "The movant . . . has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge."*Id.* at 219.

---

[1]In its Reply, the Defendant notes that the Plaintiff filed the Response to the Defendant's motions to transfer and to dismiss three and a half months after the deadline for such response. The Plaintiff has not explained the reason for its tardiness. Moreover, the Defendant notes that, although it filed two separate motions, the Plaintiff's response is contained in a single brief. The Defendant submits that such Response is in violation of Local Rule 7.1(b).

Since the Plaintiff's tardiness appears to be an isolated event and since he did file a Motion to Remand and a Motion to Strike the Defendant's Motion for Change of Venue soon after the deadline for the Response passed, the Court will excuse the Plaintiff's negligence this time. Nevertheless, the Plaintiff and the attorneys are admonished that any tardy filings in the future in this case or other cases will be struck in accordance with the Federal Rules of Civil Procedure and Local Rules of Court.

As to the Plaintiff's manner of response to the Defendant's two motions, the Court finds that, while procedurally such response may appear somewhat confusing, it is inconsequential in this case.

The parties do not dispute that venue is appropriate in this district or that the action might have been properly brought in the Eastern District of Michigan. They only disagree on whether the transfer would accommodate the convenience of the parties and witnesses and the interest of justice. Nonetheless, the Court notes that both prerequisites for the transfer are satisfied: this Court is a proper venue for the Plaintiff's case and the action might have been brought in the Eastern District of Michigan. Subject matter jurisdiction exists both in Indiana and Michigan by virtue of diversity; venue is proper in both districts because the accident took place in Michigan and the events leading up to the accident occurred in Indiana; last, the Defendant is amenable to service of process by the courts in the Eastern District of Michigan.

The remainder of the transfer analysis balances the private interests of the parties and the public interest of the court:

> Private interests include (1) plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease of access to sources of proof in each forum including the court's power to compel the appearance of unwilling witnesses at trial and the costs of obtaining the attendance of witnesses, (4) convenience to the parties—specifically, their respective residences and abilities to bear the expense of trial in a particular forum. Public interest factors include the court's familiarity with applicable law and the desirability of resolving controversies in their locale.

*Medi USA*, 791 F. Supp. at 210. "In drawing its conclusions, the court must weigh the factors for and against the transfer." *Kendall U.S.A., Inc. v. Cent. Printing Co.*, 666 F. Supp. 1264, 1267 (N.D. Ind. 1987)

**(2)** *Application of the Standard*

(a) *Plaintiff's Choice of Forum*

The Plaintiff chose to sue the Defendant in the United States District Court for the Northern

4

District of Indiana. Although that is an important factor in the transfer analysis, it is not a dominant one. *See Medi USA*, 791 F. Supp. at 210. Moreover, in this case, the Plaintiff's choice of forum outside of the district where he lives merits little deference. *See Kendall U.S.A., Inc.*, 666 F. Supp. at 1268 (the plaintiff's choice of forum is accorded deference unless the choice of forum is not his place of residence). Accordingly, the Court accords little importance to the fact that the Plaintiff sued the Defendant in this Court.

(b) *The Situs of Material Events*

The second private interest tips the scales in the Plaintiff's favor. He chose the Northern District of Indiana for his lawsuit because the causes of the accident—negligent hiring and retention of Peterson—took place here. This is an important factor in the analysis. Although the accident and the alleged injuries happened in Michigan, according to the Plaintiff's complaint, they were the direct result of the Defendant's negligence in hiring and retaining Peterson. That the accident took place in Michigan, as opposed to some other state, is inconsequential in light of the Plaintiff's theory of the case. Under these circumstances, the Court is inclined to keep the case in Indiana.

(c) *Ease of Access to Sources of Proof*

Although the Defendant argues that it would be easier to access the sources of proof if the trial were conducted in Michigan, the Defendant's concerns do not outweigh the fact that material events took place in Indiana and that evidence is present in Indiana. One of the Defendant's attorneys submitted his affidavit listing six nonparty eye-witnesses whom the Defendant may call to testify during trial. All these witnesses live in Michigan. In addition, the attorney indicated that

the Defendant may call as witnesses the emergency response and hospital personnel, as well as any doctors who provided medical treatments to the Plaintiff before and after the accident. All these potential witnesses also live in Michigan. The Defendant argues that these witnesses would suffer considerable inconvenience in having to appear for trial in Fort Wayne, and if they become unwilling witnesses, this Court would have no subpoena power over them because they are located outside the district and more than 100 miles from Fort Wayne.

If the case proceeds to trial in Indiana, surely, these witnesses will experience some inconvenience if called to testify. Yet, the inconvenience is not significant enough to require a transfer. This case is not so complex as to require an extended trial, and the testimony of the witnesses can be scheduled in advance so as to accommodate them. Since Fort Wayne is only about three hours away from south east Michigan where the witnesses are said to live, they may not need to stay overnight or otherwise considerably adjust their daily routines. And, although the Court prefers live testimony, if necessary, any Michigan witness's testimony may be introduced through a deposition.

Moreover, the trial would involve Indiana witnesses as well. The Plaintiff indicated that it would call at trial the Defendant's Indiana employees. The Plaintiff would also call Peterson, who is no longer employed by the Defendant. To a certain extent, a trial in Michigan would be just as inconvenient for these witnesses as a trial in Indiana for Michigan witnesses. Of course, the inconvenience experienced by the Defendant's employees is not as important as that of third party witnesses, especially where, as here, the Defendant requests a forum in Michigan. Yet, it is a factor to be considered, and especially as a factor for Peterson.

The Defendant's concern that this Court has no power to compel unwilling Michigan

witnesses to attend trial is not quite true. While Federal Rule of Civil Procedure 45(c)(3)(A)(ii) mandates the court to quash a subpoena that requires a nonparty witness "to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person," the rule excepts such nonparty witnesses whose in-trial testimony is substantially needed and cannot be otherwise obtained without undue hardship. *See* Fed. R. Civ. P 45(c)(3)(A)(ii) & (c)(3)(B)(iii). Moreover, the Defendant does not state that all Michigan witnesses are employed or regularly conduct business in person more than 100 miles away from Fort Wayne, and the Court will not presume such facts without further evidence.

(d) *Convenience of the Parties*

The fourth private interest, the convenience of the parties themselves, is neutral as to which forum should contain the litigation. The Defendant, which is incorporated in Delaware and has principal business in Florida, has not shown that Michigan is a more convenient forum than Indiana. A trial in Michigan may be more convenient for the Defendant's attorneys, but that is not a factor in the transfer analysis. On the other hand, by filing the case in Indiana rather than Michigan and by objecting to the transfer, the Plaintiff has demonstrated that convenience of a trial in Indiana is not an issue for him.

(e) *Public Interest*

The final factor, the public interest, weighs in favor of keeping the case in Indiana. The Plaintiff sued the Defendant for negligent hiring and retention of Peterson. The alleged wrongdoing occurred in Indiana, and this State has interest in resolving such controversies within its locale. In

addition, as explained below, Indiana law applies to this case and the Court's familiarity with it will aid the judicial economy. These considerations are not outweighed by the fact that the Defendant is already defending another case in the Eastern District of Michigan arising out of the same accident.

In summary, the Court finds that, although the litigation in Indiana presents some challenges for the Defendant, it has not met its burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient. Accordingly, the Court will deny the Defendant's motion to transfer the case to the Eastern District of Michigan.

## C. The Defendant's Motion to Dismiss

### (1) *Standard for Evaluating a Motion to Dismiss*

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). The court presumes all well-pleaded allegations to be true and views them in the light most favorable to the plaintiff, and accepts as true all reasonable inferences to be drawn from the allegations. *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995). In order to prevail, the defendant must demonstrate that "the plaintiff's claim, as set forth by the complaint, is without legal consequence." *Gomez v. Ill. State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Doherty v. City of Chi.*, 75 F.3d 318, 322 (7th Cir. 1996). Under the Federal Rules of Civil Procedure the plaintiff need only "set out in [his] complaint a short and plain statement of the claim that will provide the defendant

with fair notice of the claim." *Scott v. City of Chi.,* 195 F.3d 950, 951 (7th Cir.1999); Fed. R. Civ. P. 8(a). However, a plaintiff may not avoid dismissal simply by attaching bare legal conclusions to narrated facts that fail to support his claims. *Strauss v. City of Chi.*, 760 F.2d 765, 767–68 (7th Cir. 1984). The complaint must allege facts that sufficiently set forth the essential elements of a cause of action. *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir.1992); *see also Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir.1988) (holding that the federal rules require that a complaint allege facts that, if proven, would provide an adequate basis for each claim). The court may consider all allegations made in the complaint as well as any attachments accompanying the complaint. Fed. R. Civ. P. 10(c).

**(2) Application of the Standard**

(a) *Choice-of-Law*

The Defendant argues that, since the accident occurred in Michigan, the Plaintiff's claim is subject to Michigan law, and therefore must be dismissed because an uninsured driver may not recover under that State's No-Fault Act, MCL § 500.3135(1), (3)(b). In the alternative, the Defendant submits that, even if Indiana law applies, the case must nevertheless be dismissed because the Plaintiff's theory of negligent hiring and retention does not apply to cases where, as here, the defendant concedes that its employee was acting within the scope of his employment when he allegedly caused injury to another.

Without much analysis, the Plaintiff insists that the case is governed by Indiana law. He does not address at all the question of whether he can maintain a claim for negligent hiring and retention now that the Defendant has conceded that Peterson was acting within the scope of his employment.

In order to rule on the Defendant's motion, the Court must determine whether Michigan or Indiana law applies. In a suit based on diversity, the Court must apply the choice-of-law rules of the state in which it sits, *see Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941), in this case, Indiana. In tort cases, Indiana uses *lex loci delicti* "as a starting point . . . unless the state where tort occurred 'is an insignificant contact.'" *Simon v. United States*, 805 N.E.2d 798, 804 (Ind. 2004). Under this principle, "the court must first determine whether the differences between the laws of the states are important enough to affect the outcome of the litigation." *Id.* If such differences exist, "the court applies the substantive law of "the state where the last event necessary to make an actor liable for the alleged wrong takes place." *Id.* at 805 (citing *Hubbard Mfg. Co., Inc., v. Greeson*, 515 N.E.2d 1071, at 1073 (Ind. 1987).

> This presumption is not conclusive, however. It may be overcome if the court is persuaded that the place of the tort "bears little connection" to this legal action.
>
> If the location of the tort is insignificant to the action, the court should consider other contacts that may be more relevant, such as: 1) the place where the conduct causing the injury occurred; 2) the residence or place of business of the parties; and 3) the place where the relationship is centered. These factors are not an exclusive list nor are they necessarily relevant in every case. All contacts should be evaluated according to their relative importance to the particular issues being litigated. This evaluation ought to focus on the essential elements of the whole cause of action, rather than on the issues one party or the other forecasts will be the most hotly contested given the anticipated proofs.

*Id.* Indiana analyzes claims separately as to what law to apply, but does not apply choice-of-law analysis to issues within a claim. *Id.* at 801.

Here, the differences between Michigan and Indiana laws are important enough to affect the outcome of the litigation. The Plaintiff's claims are barred under Michigan's No-Fault Act, MCL § 500.3135(1), (3)(b), but may be viable under Indiana law. As a consequence, the Court must determine which state's law to apply. "The presumption is that the law of the place of the tort applies

because in a 'large number of cases, the place of the tort will be significant and the place with the most contacts." *Simon*, 805 N.E.2d at 805 (citing *Hubbard*, 515 N.E.2d at 1073).

Yet, this is one of those rare cases where the location of the tort bears little connection to the Plaintiff's claim. The accident took place in Michigan, and it was the last necessary event to make the Defendant liable for Peterson's alleged negligence. However, according to the Complaint, the Defendant was directly, not vicariously, responsible for the accident because it allowed a careless driver to operate one of its trucks. If the Plaintiff's allegations are true, a truck with Peterson at the wheel was like a defective product in the stream of commerce. Although Peterson was allegedly negligent in taking a prohibited turn on Michigan roads, the gravamen of this case is the Defendant's own negligence in hiring and retaining him. The location of the accident is legally insignificant. *Cf. Jean v. Dugan*, 814 F. Supp. 1401, 1409 (N.D. Ind. 1993) (although plaintiff was fired in Illinois, Indiana law controlled the case because all actions leading up to the firing took place in Indiana); *Hubbard*, 515 N.E.2d at 1074 (Indiana law applied to a claim for a wrongful death in Illinois caused by a lift defectively manufactured in Indiana).

Since the location of the last event making the Defendant liable is not important to the Plaintiff's suit, the Court looks to other contacts that may be more relevant. As noted above, the events that transpired in Indiana, that is, the Defendant's hiring and retention of Peterson despite his poor driving record, are the essence of the suit. In addition, the Defendant has a place of business in Indiana, and its relationship with Peterson was centered there. These factors mandate that Indiana law be applied to the Plaintiff's negligent hiring and retention claim.

On the other hand, the allegation that Peterson took a prohibited turn will be governed by Michigan law. Michigan traffic laws are relevant in determining whether Peterson was at fault in

causing the accident. In this instance, the location is not one that would bear little connection to the Plaintiff's claim. Accordingly, the ordinary application of *lex loci delicti* to this claim is proper.

(b) *Negligent Hiring and Retention*

The Defendant argues that the Plaintiff may not sue it for negligent hiring and retention because it conceded that Peterson acted within the scope of his employment. The Defendant argues that the Plaintiff's only cause of action is to pursue it for Peterson's negligence under *respondeat superior*. The Defendant relies on *Konkle v. Henson*, 672 N.E.2d 450, 454 (Ind. Ct. App. 1996), an Indiana Court of Appeals case.

*Konkle* does not bar a plaintiff from ever bringing a case for negligent hiring and retention against an employer if the offending employee was acting within the scope of his or her employment. *Konkle* does recognize that the norm for negligent hiring and retention claims is in cases where an employer knew of its employee's misconduct outside the scope of his or her employment, yet chose to do nothing about it. 672 N.E.2d at 454 n.4 ("A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others . . . .") (citing Restatement (Second) of Torts § 317). Generally, the negligent hiring and retention claims are extraneous where the employer is liable under *respondeat superior*, that is, where the employee acted within the scope of his or her employment, because a proof of additional elements of the employer's negligence would not be relevant to the issues in dispute and would be a waste of the court's time. *Levinson v. Citizens Nat'l Bank of Evansville*, 644 N.E.2d 1264, 1269 (Ind. Ct. App. 1994) (citing *Tindall v. Enderle*, 320 N.E.2d 764, 768 (Ind. Ct. App. 1974)). But neither *Konkle* nor other Indiana cases rule out the

exceptions.

The main exception to the pursuit of negligent hiring and retention theory, even if *respondeat superior* liability is shown, is in cases where punitive damages are sought. *See Levinson*, 644 N.E.2d at 1269. In such cases, a claim of negligent hiring and retention does not merely establish an employer's liability, which would be repetitious to the *respondeat superior* claim. Rather, it justifies an assessment of punitive damages against an employer which allowed a known tortfeasor to be employed even as others were subjected to danger.

The Plaintiff's entire case rests on this proposition but the Defendant does not address it in either its brief in support of the motion to dismiss or in its reply brief. Since the Plaintiff is seeking punitive damages against the Defendant, he may proceed on his negligent hiring and retention theory. The Defendant has not demonstrated that the Plaintiff's claim, as set forth by the Complaint, is without legal consequence, and it does not appear beyond doubt that the Plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Accordingly, the Court will deny the Defendant's motion to dismiss.

## CONCLUSION

For the reasons stated above, the Court denies the Defendant's

- Motion for a Hearing Regarding a Motion to Change Venue [DE 7];
- Motion for a Hearing Regarding a Motion to Dismiss [DE 10];
- Motion to Change Venue [DE 6]; and
- Motion to Dismiss [DE 8].

SO ORDERED on July 7, 2006.

    S/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT